## Case No. 3,308.

### COX v. WILDER et al.

[2 Dill. 45;[1] 7 N. B. R. 241; 5 Am. Law. T. Rep. U. S. Cts. 500.]

Circuit Court, E. D. Missouri. 1872.[2]

BANKRUPT ACT—DOWER—HOMESTEAD EXEMPTION —FRAUDULENT CONVEYANCE.

1. As against the assignee in bankruptcy, the wife is not barred or estopped to claim dower, by reason of her having joined her husband in a deed which is fraudulent as to creditors, and which has for this reason been set aside at the instance of the assignee.

[Cited in Re Pratt, Case No. 11,370; McFarland v. Goodman, Id. 8,789.]

2. A similar principle was applied under the statute of Missouri to the homestead exemption right, which, as against the assignee in bankruptcy, was *held* not to be forfeited by the making of a fraudulent conveyance, which was set aside at the instance of the assignee.

[Cited in Bartholomew v. West, Case No. 1,071; Re Richardson, Id. 11,776; Re Detert, Id. 3,829; Market Nat. Bank v. Hofheimer, 23 Fed. 17.]

This is an appeal from a decree of the district court for the eastern district of Missouri. [Case No. 3,309.] Cox is the assignee in bankruptcy of Sauer. Sauer and wife made a conveyance of the farm of Sauer, on which he and his family resided, to Wilder, within six months of the bankruptcy. The district court found that the conveyance was fraudulent as to creditors, and decreed that all of the rights of Wilder, and of Sauer, and of his wife (who were defendants to the bill), be divested out of the defendants, and be vested in the plaintiff as assignee, free and discharged of the homestead claim of Joseph E. (the husband), and the dower right of Mary E. (the wife); from which decree the defendants appeal.

C. C. Whittlesey, for assignee.

Dryden & Dryden, for defendants.

Before DILLON, Circuit Judge, and KREKLE, District Judge.

DILLON, Circuit Judge. The deed to Wilder was executed by Sauer and wife, and was absolute in form and duly acknowledged. It was intended to secure advances to be made, but which were, in fact, never made, and we agree with his honor below, that, whether regarded as a sale to Wilder, or as security for advances which upon a contingency he promised to make, it was intended to delay creditors, and was, there-

fore, as to them, fraudulent and void. Not having been recorded, the deed was, after the bankruptcy, surrendered by Wilder to Sauer, and destroyed. The only question in the case is, whether the assignee is entitled to the land free of the dower and homestead rights.

The grounds of the decree below were very fully and ably stated by the district judge in his opinion on a demurrer to the bill, and which is reported in 5 N. B. R. 443 [Cox v. Wilder, Case No. 3,309].

We are unable, however, to concur in the conclusion to which he has arrived respecting the dower. It is a peculiar and favored right; so much favored, indeed, that, according to Lord Bacon, it is "the common by-word in the law, that the law favoreth three things: first, life; second, liberty; third, dower." Dower can only be relinquished in this state (Missouri) by the wife joining with the husband in a deed of the land, acknowledged and certified as required by the statute. Rev. St. 1865, p. 444, § 2. It cannot be released to a stranger. The wife could not have relinquished it by herself to Wilder. It cannot exist as a separate right in him or his grantee, dissociated, so to speak, from the interest or estate of the husband. As against the grantee, she is estopped by her deed to claim dower, but the estoppel cannot operate in favor of or be claimed by a stranger, or third person, under whom the complainant does not derive or claim title: Robinson v. Bates, 3 Metc. (Mass.) 40; Pixley v. Bennett, 11 Mass. 298; Morton v. Noble [57 Ill. 176], and cases cited by Scott, J.; Summers v. Babb, 13 Ill. 483; 1 Washb. Real Prop. 234, pl. 16; Sears v. Hanks, 14 Ohio St. 298. We solve the question here presented as to dower, when we determine under whom the assignee claims and to whose rights he succeeds. The bankrupt act [of 1867 (14 Stat. 522)] among other things, invests him with the right or title to "all the property conveyed by the bankrupt in fraud of his creditors." Section 14.

He claims not under, but adversely, to the deed of Wilder. He succeeds to all the interests of the bankrupt, and represents his creditors so far as to enable him to attack conveyances made by the bankrupt in fraud of their rights. He claims that the deed is void as to creditors, and on this ground alone attacks it, and upon this ground alone has he any right to the property. He says it is void as to creditors because fraudulent, and for this reason asks to be invested with the title which it fraudulently conveyed. He cannot claim under it, and must claim against it. When it is decreed to be fraudulent and void at his instance, how can he set it up to defeat the right of the wife to dower? Such a position involves this inconsistency, viz: that it asks that the same instrument be held void as to creditors, and then in their favor held valid as to the wife. We concur in opinion with those courts which hold, as

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]
[2] [Reversing Case No. 3,309.]

in the cases above cited, that the wife is not, under such circumstances, barred of her dower.

When we consider the intimate and confidential relations between husband and wife; the control and influence of the former over the latter in matters of business; the public policy in which the right of dower has its origin and support in the law, namely, a provision for the widow; and that if the fraudulent conveyance had not been made, the dower right would have been beyond the reach of the creditors or the assignee, we find it difficult to resist the conviction that, as between the wife and the assignee, the equity as to the dower right is with her, and that to deprive her of it, is, in substance and effect, to punish her for the intended, but by the decree the court makes, the ineffectual, fraud of the husband.

Similar considerations, in my judgment, apply to the homestead right, although here I have the misfortune to differ not only with his honor below, but with my associate on this appeal. Exempt property does not pass to the assignee (section 14), and the bankrupt law exempts, inter alia, from the operation of the assignment, all such property as was exempt from levy and sale, upon execution by the law of the state, to an amount not exceeding that allowed by the state exemption laws in force in the year 1864. Section 14.

By the act of March 23, 1863 (Laws Mo. 1863, p. 22), it is provided that "there shall be exempt from sale under execution (or other process), when owned by the head of a family, or wife, who shall be a bona fide resident of the state, any of his or her real estate, not exceeding (one hundred and sixty acres, if farming land, or one lot in town or city) in value one thousand dollars at the date of such exemption, to be held and enjoyed by such party as a homestead."

9th. "Where the real estate owned by any head of a family is of greater value than the amount allowed as the value of a homestead to be exempt from sale under the provisions of this act, and is not susceptible of division, such real estate may be sold, and the officer shall pay over to the defendant in such execution the amount or value of a homestead to be exempt under the provisions of this act."

Sec. 11. "Such exemption shall continue after the death of such householder, for the benefit of the widow and family, some or one of them continuing to occupy such homestead." etc.

The homestead is the place where the family reside—the home; and, since the exemption is allowed only to the head of a family it is obvious that the provision is not made solely on account of the husband, but has in view also the wife and children—the family. 1 Am. Law Reg. (N. S.) 645-651. These exemptions, in view of their benevolent and humane character, are entitled to be liberally viewed by the courts (Id.), although, of course, the right must be claimed under the qualifications and conditions prescribed by the statute. Now, by the bankrupt act, the assignee takes "all the property conveyed by the bankrupt in fraud of his creditors" (section 14), that is, takes it as fully and effectually as if the fraudulent conveyance had not been made. As respects the assignee, the property is still the bankrupt's at the date of the bankruptcy, and the assignee takes under or through him.

Except for the deed to Wilder the bankrupt would be entitled to the exemption. But, as we have seen, the assignee does not and cannot claim under that deed, but in hostility to it; and when it is avoided, and the title placed in the assignee, I do not think (in view of the purpose of the exemption) that the husband is estopped, as against the assignee, to claim the right to the homestead, or the value, to the extent given by the statute. This view does not make the estate any less than if the fraudulent conveyance had not been made, while the opposite view gives the creditors a profit out of the attempted fraud. at the expense of the family for whose benefit the exemption is mainly if not wholly provided.

If the law gave to a single man the right to this exemption, it would accord with the natural desire to punish fraud, to visit a penalty upon him; but to denounce a forfeiture of the homestead where there is a family, subverts the policy on which the exemption is provided and allowed. Reversed.

NOTE [from original report]. Construction of Missouri statute on the subject of the homestead exemption: See In re Hook [Case No. 6,671]; Smith v. Kehr [Id. 13,071]. Construction of Nebraska statute on same subject: In re Cross [Id. 3,426]. Construction of constitution of Kansas upon the same subject: Rix v. Capitol Bank [Id. 11,869]; In re Tertelling [Id. 13,842]. Of the statute of Kansas: In re Jones [Id. 7,445]. Generally as to homestead right: 1 Am. Law Reg. (N. S.) 645-651, and cases there cited; Smith v. Kerr [supra].